IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN SHADLE, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | NO.  4:25-CV-00476 |
| | : | |
| PENNSYLVANIA STATE SYSTEM OF | : | |
| HIGHER EDUCATION; | : | JUDGE: |
| COMMONWEALTH UNIVERSITY OF | : | |
| PENNSYLVANIA; TINA MAURER, | : | ELECTRONICALLY FILED |
| Individually and as Associate Vice | : | |
| President of Human Resources and | : | |
| Labor Relations of Commonwealth | : | JURY TRIAL DEMANDED |
| University of Pennsylvania; and | : | |
| BELINDA SAUERS, Individually and as | : | |
| Safety Director of Commonwealth | : | |
| University of Pennsylvania, | : | |
| | : | |
| Defendants | | |

## COMPLAINT

1.    Plaintiff, Steven Shadle, is an adult individual currently residing

at 2410 Ridge Road, Montgomery, Pennsylvania within the Middle District of

Pennsylvania

2.    Defendant Pennsylvania State System of Higher Education ("PASSHE") is "part of the Commonwealth's system of higher education," a "body corporate and politic constituting a public corporation and government instrumentality" established by the Commonwealth of Pennsylvania, which may be located within the Middle District of Pennsylvania, and originally encompassed several Colleges including, inter alia, Bloomsburg State College, Lock Haven State College, and Mansfield State College.  24 Pa. Stat. §§2002-A(a) and 2003-A(a).

3.    PASSHE is governed by a Board of Governors whose powers and duties include establishing "broad . . . personnel . . . policies under which the institutions of the system shall operate,"  "general personnel policies under which the institutions shall operate consistent with merit principles . . . and to enter into collective bargaining agreements."   24 Pa. Stat. §§2004-A(a), 2006-A(a)(4) and 2006-A(a)(8.

4.    Defendant Commonwealth University of Pennsylvania ("Commonwealth University") was established by PASSHE in or about July 2022 consolidating, inter alia, Bloomsburg, Lock Haven, and Mansfield universities into a single entity, known as Commonwealth University of Pennsylvania, which may be located within the Middle District of

Pennsylvania, having one president and a leadership team, and operating under PASSHE's ultimate control.

5. Due to the interrelationship, and relative duties and responsibilities of Defendants PASSHE and Commonwealth University involved in this case, those Defendants are jointly referred to herein as "Defendant Employers."

6. Defendant Tena Maurer is an adult individual, who, at all times relevant hereto, was the Associate Vice President of Human Resources of Commonwealth University, with duties and responsibilities including the drafting of Position Descriptions and job postings, and making hiring decisions for positions such as Safety Inspector, and who may be located within the Middle District of Pennsylvania.

7. Defendant Belinda Sauers is an adult individual who, at all times relevant hereto, was Safety Director of Commonwealth University with responsibilities and duties including the drafting of Position Descriptions and job postings for positions under her Department, and hiring individuals into those positions, including Safety Inspector, who may be located within the Commonwealth of Pennsylvania.

8. At all times relevant hereto, Defendant Maurer was Defendant Sauers' immediate superior.

9.      This action is brought pursuant to the Uniform Services Employment and Re-Employment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 et seq; the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983; 42 U.S.C. §1985(3); and the Pennsylvania Veterans' Preference Act, 51 Pa. C.S. §§7101 et seq.

10.     At all times relevant hereto, Defendants were state actors, and acted under color of state law, pursuant to the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1983.

11.     At all times relevant hereto, Defendants were employers within the meaning of USERRA, 38 U.S.C. §4303(4)(a), and Defendant Employers were an "appointing authority" pursuant to the Veterans Preference Act.  51 Pa. C.S. §7104(a).

12.     Defendant Employers were, at all times relevant hereto, required to adhere to USERRA and the Veterans' Preference Act.

13.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and §1433, 38 U.S.C. §4323(b), and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

14.    Defendants were found doing business within the Middle District of Pennsylvania, and a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Pennsylvania.

15.    Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391.

16.    Shadle is a male, who, having served in the United States Air Force and was honorably discharged, is a veteran as defined by the Veterans' Preference Act at 58 Pa. C.S. §7101.2.

17.    Shadle has been employed by Defendant Employers at their Lock Haven Campus since on or about July 20, 1998, as a Maintenance Repairman II.

18.    At all times relevant hereto, Shadle's employment with Defendant Employers was a unionized position under a Collective Bargaining Agreement between the Commonwealth of Pennsylvania, Defendant Employers, and Council 13, American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME").

19.    On or about January 13, 2023, Defendant Employers posted a job opening for a Safety Inspector, an AFSCME union position, with Lock Haven being the home campus.

20.    The Safety Inspector position was a non-civil service "public position" under the Veterans' Preference Act. 51 Pa. C.S. §7104(a).

21.    The direct supervisor and Hiring Manager for the position was Defendant Sauers, who also had decision-making authority over assessing and hiring for the Safety Inspector position.

22.    Defendant Maurer, as Defendant Sauer's supervisor, also had direct input into, and decision-making authority over assessing and hiring for the Safety Inspector position.

23.    The job posting contains language that "The university prohibits any form of discrimination . . . on the basis of sex . . . [or] veteran status . . . in accordance with the letter and spirit of federal, state, and local non-discrimination and equal opportunity laws."

24.    The job posting listed "Minimum Qualifications (Required Knowledge, Skills and Abilities)" for the position.

25.    Under the Veterans' Preference Act, those "Minimum Qualifications" were the "requisite qualifications for appointment to [the] public position" of Safety Inspector. 51 Pa. C.S. §7104(a).

26.    The job posting did not list any other requisite, minimum or preferred qualifications.

27.     The actual Position Description for the Safety Inspector Position, created in January 2023, listed the same "Requirements" as above, and did not include any other requisite, minimum or preferred qualifications.

28.     Shadle submitted an Application for the Safety Inspector position, along with a letter of application, and resume on January 19, 2023.

29.     The Application form specifically asked if applicants were veterans and claiming eligibility for veteran's preference under the Veterans' Preference Act.

30.     In his Application, Shadle stated that he was a veteran claiming eligibility for veteran's preference under the Veterans' Preference Act.

31.     On or about February 17, 2023, Deana Hill, who was, at the time, Defendant Employers' Associate Vice President for Labor Relations and Human Resources, told Shadle that he met the minimum qualifications for the Safety Inspector position.

32.     At that time, Ms. Hill had the same decision-making authority over assessing and hiring for the Safety Inspector position as her ultimate replacement, Defendant Maurer, until Ms. Hill's retirement.

33.     On or about February 28, 2023, Shadle provided Defendant Sauers with additional information regarding his qualifications.

34.     Shadle was given an interview for the position.

7

35.    The official Applicant Log completed and maintained by Defendants for the Safety Inspector position admitted and confirmed that Shadle met the minimum qualifications for the position.

36.    Pursuant to the Veterans' Preference Act: "Whenever a veteran possesses the requisite qualifications for appointment to a public position that is not subject to civil service appointment examination and the veteran is otherwise eligible for appointment, the appointing authority in making the appointment shall give preference to the veteran." 51 Pa. C.S. §7104(a).

37.    None of the other interviewed applicants were veterans nor eligible for veteran's preference under the Veterans' Preference Act.

38.    Although the Applicant Log contained a section regarding whether an applicant had met some or all of "preferred qualifications," as noted above neither the job posting nor Position Description listed any "preferred qualifications."

39.    Although Shadle was scored on the Applicant Log as having met all minimum qualifications, and although there were no "preferred qualifications" listed on the job posting or Position Description, the Applicant Log stated that Shadle did not meet "some/all of preferred qualifications."

40.    On the Applicant Log, there were no "Rejection codes" listed for Shadle.

41.    Holly Evans ("Evans"), a female non-veteran who, as shall be discussed hereafter in more detail, had also applied for the position, was scored on the Applicant Log as not having met "some/all of preferred qualifications," was given a "Rejection code" of "Meets minimum quals, but not among the most qualified applicants," and was not given an interview.

42.    On the Applicant Log, Shadle had a Post Application Review Overall Committee Score of 24.

43.    On the Applicant Log, Evans had a lower Post Application Review Overall Committee Score of 23.

44.    Following his interview, Shadle was rejected for the position, per the Applicant Log, as "Candidate did not emerge among the most qualified candidates post interview."

45.    The Veterans' Preference Act required only that the applicant "possesses the requisite qualifications," not that they be the best or even "among the most qualified." 51 Pa. C.S. §7104(a).

46.    Ms. Hill retired and was replaced by Defendant Maurer as Defendant Employers' Associate Vice President of Human Resources.

47.    On or about May 2, 2023, following Ms. Hill's retirement, the President of the AFSCME Local at the Lock Haven Campus spoke with Defendant Maurer regarding Shadle's qualifications.

48.     Defendant Maurer said that she did not believe Shadle had all of the requisite qualifications, but that she would check into it.

49.     Ultimately, Defendant Maurer indicated that she believed Shadle did not meet the requisite qualifications.

50.     As described above, and pursuant to the Veterans' Preference Act, Defendant Maurer in fact knew that Shadle had and continued to meet all of the requisite qualifications for the position.

51.     On or about May 24, 2023, Shadle received an unsigned email from Defendant Employers' Human Relations and Labor Relations Section stating, "We regret to inform you that the University has made the decision to move the search in another direction that more closely fits our needs at this time."

52.     Nobody was hired for the January 2023 job posting.

53.     On or about May 12, 2023, AFSCME, on behalf of Shadle, filed a Grievance alleging, inter alia, that Shadle "met the required eligibility requirements for the job of Safety Inspector and was not offered the job" in violation of, inter alia, the Veterans' Preference Act.

54.     Defendant Employers, through Defendant Maurer, denied the Grievance by alleging that Shadle did not meet one of the "minimum requirements," and that the "Veterans' Preference Act 51 Pa. C.S. §7101.1-

7111 does not guarantee employment since minimum qualification were [sic.] not met.  No violation occurred."

55.    The Grievance remains pending because it has not yet been determined whether there is an arbitrable issue involved.

56.    On or about June 12, 2023, Defendant Employers again posted for applications for a Safety Inspector position.

57.    Upon information, knowledge and belief, the second posting was drafted by Defendant Sauers and/or Defendant Maurer, and each had input and decision-making authority into the same.

58.    The actual Position Description for the position had not been changed.

59.    The June 2023 posting contained the same "Minimum Qualifications" as the January 2023 posting.

60.    However, the June 2023 posting for the first time added "Preferred Qualifications."

61.    Upon information, knowledge and belief, these "Preferred Qualifications" were added specifically in an attempt to preclude Shadle from being awarded the position.

62.    In addition, upon information, knowledge and belief, these "Preferred Qualifications" were added specifically to benefit and enable the hiring of Holly Evans, a female non-veteran, over Shadle.

63.    Prior to the posting, Defendant Employers never notified AFSCME of the changes, nor sought AFSCME's agreement to the same.

64.    Changing the posting in this manner without notice to and agreement of AFSCME violated the Collective Bargaining Agreement.

65.    The job posting continued to contain the language that "The university prohibits any form of discrimination . . . on the basis of sex . . . [or] veteran status . . . in accordance with the letter and spirit of federal, state, and local non-discrimination and equal opportunity laws."

66.    On June 12, 2023, Defendant Sauers sent an email to the AFSCME President at Lock Haven with a copy to Defendant Maurer stating: "Since changes have been made to the posting, I do not think it is ready to be posted."

67.    The AFSCME President at Lock Haven responded to Defendant Sauers, with a copy to Defendant Maurer, as follows: "I agree. This should not be posted yet. The issue of Veterans' Preference involving Steven Shadle, has never been resolved to AFSCME's satisfaction."

68.     Defendant Maurer responded as follows: "Thank you for your email.  We received a Grievance on the subject you noted below, however, this Grievance should not stop the posting of the position when the team is ready to move forward."

69.     Defendants still never sought AFSCME's agreement with the changes to the job posting.

70.     On or about June 27, 2023, Shadle submitted a new Application, letter of application and resume for the position, which provided even further statements of his qualifications for the position.

71.     On his June 27, 2023 Application, Shadle again claimed eligibility for veteran's preference under the Veterans' Preference Act.

72.     Shadle continued to meet the requisite qualifications for the position pursuant to the job posting and Position Description, although he did not possess certain of the new "Preferred Qualifications" listed on the June 2023 posting.

73.     Nevertheless, Shadle was not even interviewed for the position posted in June 2023.

74.     On or about October 20, 2023, Shadle learned that Ms. Evans had been selected for the position.

75.    AFSCME, on behalf of Shadle, filed a Grievance concerning that selection stating: "Grievant submitted an application for Safety Inspector on 1/19/23, was given a phone interview after it was determined that he met the required eligibility requirements for the job of Safety Inspector posting and was not offered the job.  Position was reposted on 6/14/23 and the Grievant was not given an interview this time violating the Veterans' Preference Act...."

76.    Defendant Employers, through Defendant Maurer, denied the Grievance by alleging, again, that Shadle did not meet one of the "minimum requirements."

77.    In the denial, Defendant Maurer did not address the Veterans' Preference Act.

78.    The Grievance remains pending because it has not yet been determined whether there is an arbitrable issue involved.

79.    As a legal result of Defendants' conduct, Shadle has suffered loss of wages and benefits, loss of future wages and benefits, emotional distress and humiliation, attorney's fees and costs, and such other damages as may become apparent.

COUNT I

USERRA

SHADLE V. ALL DEFENDANTS

14

80.    Paragraphs 1 through 79 are incorporated herein by reference as though fully set forth.

81.    According to USERRA, the term "'employer' means any person, institution, organization or other entity that pays salary or wages for work performed or that has control over employment opportunities, including – a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities [and] a State." 38 U.S.C. §4303(4)(a)(i) and (iii).

82.    Pursuant to USERRA: "A person who . . . has performed . . . service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership."  38 U.S.C. §4311(a).

83.    Pursuant to USERRA: "An employer shall be considered to have engaged in actions prohibited – under subsection (a), if the person's . . . service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service." 38 U.S.C. §4311(c)(1).

84.    Defendants violated USERRA by inter alia: improperly changing the job posting between January and June 2023 in an attempt to preclude

Shadle from being awarded the position, and in order to benefit and enable the hiring of Holly Evans, a non-veteran; ignoring Shadle's recitation of additional qualifications in his application documents regarding the June 2023 job posting; in not affording Shadle an interview in regard to the June 2023 posting but granting Evans an interview; in hiring Evans, a non-veteran, over Shadle; and in other ways to be determined via discovery.

85.    Defendants knew or showed reckless disregard for whether their conduct was prohibited by USERRA, and acted willfully in failing or refusing to comply with USERRA.

WHEREFORE, Plaintiff respectfully requests This Honorable Court enter judgment in his favor and award him damages for loss of wages and benefits, loss of future wages and benefits, liquidated damages, attorney's fees and costs, immediate placement into the Safety Inspector position with seniority back to the date Plaintiff originally should have been awarded the position after the January 2023 job posting, interest on lost wages of benefits, injunctive and declaratory relief, and such other relief as is appropriate. Plaintiff demands a jury trial.

## COUNT II

## PROCEDURAL DUE PROCESS

## SHADLE V. DEFENDANTS PENNSYLVANIA STATE

SYSTEM OF HIGHER EDUCATION AND COMMONWEALTH
UNIVERSITY OF PENNSYLVANIA

86.     Paragraphs 1 through 85 are incorporated herein by reference as though fully set forth.

87.     Pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution: "No state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, Section 1.

88.     Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. §1983.

89.     Pursuant to the Veterans' Preference Act: "Whenever a veteran possesses the requisite qualifications for appointment to a public position that is not subject to civil service appointment examination and the veteran is otherwise eligible for appointment, the appointing authority in making the appointment shall give preference to the veteran."  51 Pa. C.S. §1704(a).

90.    Shadle had a property interest in Defendant Employer's giving Shadle veteran's preference for both times he applied for the Safety Inspector position.

91.    Defendants Maurer and Sauers, who had decision-making authority regarding the Safety Inspector job postings, assessing applicants, and hiring for the position failed or refused to provide Shadle with the veteran's preference to which he was entitled.

92.    Defendant Employers failed or refused to give Shadle the veteran's preference to which he was entitled.

93.    Defendants therefore violated Shadle's rights to Due Process and under 42 U.S.C. §1983.

94.    Defendants Maurer and Sauers acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless disregard and deliberate or callous indifference to Shadle's rights.

95.    Had Defendants given Shadle the veterans' preference to which he was entitled, Shadle would have been awarded the Safety Inspector position following either the January 2023 or June 2023 job postings.

WHEREFORE, Plaintiff respectfully requests This Honorable Court to enter judgment in his favor and award declaratory and injunctive relief

including that Defendants violated Shadle's due process rights, and ordering Defendant Employers to immediately place Shadle in the Safety Inspector position with seniority back to the date he should have been awarded the same following the January 2023 job posting, attorney's fees and costs, and such other relief as may be appropriate.  Shadle demands a jury trial.

COUNT III

DUE PROCESS

SHADLE V. DEFENDANTS MAURER AND SAUERS

96.    Paragraphs 1 through 95 are incorporated herein by reference as though fully set forth.

97.    Pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution: "No state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, Section 1.

98.    Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983.

99.    Pursuant to the Veterans' Preference Act: "Whenever a veteran possesses the requisite qualifications for appointment to a public position that is not subject to civil service appointment examination and the veteran is otherwise eligible for appointment, the appointing authority in making the appointment shall give preference to the veteran." 51 Pa. C.S. §1704(a).

100.    Shadle had a property interest in Defendant Employer's giving Shadle veterans' preference for both times he applied for the Safety Inspector position.

101.    Defendants failed or refused to give Shadle the preference to which he was entitled under the Veterans' Preference Act, thereby violating Shadle's rights to due process under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

102.    Defendants Maurer and Sauer acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless disregard and deliberate or callous indifference to Shadle's rights.

WHEREFORE, Plaintiff respectfully requests This Honorable Court enter judgement in his favor, and award him damages for lost wages and benefits, lost future wages and benefits, emotional distress, other

compensatory damages, punitive damages, interest, attorney's fees and costs, declaratory and injunctive relief, and such other relief as is appropriate. Plaintiff demands a jury trial.

## COUNT IV

## EQUAL PROTECTION

### SHADLE V. THE PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION AND COMMONWEALTH UNIVERSITY OF PENNSYLVANIA

103.    Paragraphs 1 through 102 are incorporated herein by reference as though fully set forth.

104.    Pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution: "no state shall . . . deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, Section 1.

105.    Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. §1983.

106.    By virtue of his employment history, the job duties and responsibilities he had performed, other qualifications, and seniority, Shadle was more qualified to be awarded the Safety Inspector position than Evans, a female.

107.    Defendants Maurer and Sauers had the decision-making authority from Defendant Employers in drafting the job postings for the Safety Inspector position, assessing applicants, and hiring someone for that position.

108.    Defendants Maurer and Sauers failed or refused to hire Shadle into the Safety Inspector position following either the January 2023 or June 2023 job postings, and did not even afford Shadle an interview following the June 2023 job posting, and awarded Evans, a female, the position, thereby violating Shadle's rights to equal protection, based upon his sex, under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

109.    Defendants Maurer and Sauer acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless disregard and deliberate or callous indifference to Shadle's rights.

110.    Had Defendants not violated Shadle's rights to equal protection and under 42 U.S.C. §1983, Shadle would have been awarded the Safety

Inspector position following either the January 2023 or June 2023 job postings.

WHEREFORE, Plaintiff respectfully requests This Honorable Court to enter judgment in his favor and award declaratory and injunctive relief including that Defendants violated Shadle's rights to equal protection, and ordering Defendant Employers to immediately place Shadle in the Safety Inspector position with seniority back to the date he should have been awarded the same following the January 2023 job posting, attorney's fees and costs, and such other relief as may be appropriate. Shadle demands a jury trial.

COUNT V

EQUAL PROTECTION

SHADLE V. DEFENDANTS MAURER AND SAUERS

111.    Paragraphs 1 through 110 are incorporated herein by reference as though fully set forth.

112.    Pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution: "no state shall . . . deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, Section 1.

113.    Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. §1983.

114.    By virtue of his employment history, the job duties and responsibilities he had performed, other qualifications, and seniority, Shadle was more qualified to be awarded the Safety Inspector position than Evans, a female.

115.    Defendants Maurer and Sauers had the decision-making authority from Defendant Employers in drafting the job postings for the Safety Inspector position, assessing applicants and hiring someone for that position.

116.    Defendants Maurer and Sauers changed the job posting qualifications, failed or refused to hire Shadle into the Safety Inspector position following either the January 2023 or June 2023 job postings, and did not even afford Shadle an interview following the June 2023 job posting, and awarded Evans, a female, the position, thereby violating Shadle's rights to equal protection, based upon his sex, under the Equal Protection Clause of

the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

117.    Defendants Maurer and Sauer acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless disregard and deliberate or callous indifference to Shadle's rights.

118.    Had Defendants not violated Shadle's rights to equal protection and under 42 U.S.C. §1983, Shadle would have been awarded the Safety Inspector position following either the January 2023 or June 2023 job postings.

WHEREFORE, Plaintiff respectfully requests This Honorable Court enter judgement in his favor, and award him damages for lost wages and benefits, lost future wages and benefits, emotional distress, other compensatory damages, punitive damages, interest, attorney's fees and costs, declaratory and injunctive relief, and such other relief as is appropriate. Plaintiff demands a jury trial.

COUNT VI

42 U.S.C. §1985

SHADLE V. DEFENDANTS MAUER AND SAUERS

119.    Paragraphs 1 through 118 are incorporated herein by reference as though fully set forth.

120.    42 U.S.C. §1985 provides:  "If two or more persons in any State.
. . conspire. . . for the purpose of depriving, either directly or indirectly, any
person . . . of the equal protection of the laws, or of equal privileges and
immunities under the laws. . . [and] if one or more persons engaged therein
do, or cause to be done, any act in furtherance of the object of such
conspiracy, whereby another is injured in his person or property, or deprived
of having and exercising any right or privilege of a citizen of the United States,
the party so injured or deprived may have an action for the recovery of
damages occasioned by such injury or deprivation, against any one or more
of the conspirators.

121.    Defendant Maurer and Defendant Sauers conspired to deprive
Shadle of his due process and equal protection rights, and rights under
USERRA, as described above, by, inter alia, failing and refusing to award
Shadle the Safety Inspector position following either the January 2023 or
June 2023 job postings, changing the job posting in an attempt to preclude
Shadle from being awarded the position, and to benefit and enable the hiring
of Evans, and in ultimately hiring Evans over Shadle.

122.    Defendants Maurer and Sauer acted with intent, and/or engaged
in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless
disregard and deliberate or callous indifference to Shadle's rights.

26

123.    Had Defendants not violated Shadle's rights, Shadle would have been awarded the Safety Inspector position following either the January 2023 or June 2023 job postings.

WHEREFORE, Plaintiff respectfully requests This Honorable Court enter judgement in his favor, and award him damages for lost wages and benefits, lost future wages and benefits, emotional distress, other compensatory damages, punitive damages, interest, attorney's fees and costs, declaratory and injunctive relief, and such other relief as is appropriate. Plaintiff demands a jury trial.

COUNT VII

VETERANS' PREFERENCE ACT

SHADLE V. ALL DEFENDANTS

124.    Paragraphs 1 through 123 are incorporated herein by reference as though fully set forth.

125.    Pursuant to the Veterans' Preference Act: "Whenever a veteran possesses the requisite qualifications for appointment to a public position that is not subject to civil service appointment examination and the veteran is otherwise eligible for appointment, the appointing authority in making the appointment shall give preference to the veteran."  52. Pa. C.S. §7104(a).

126.    Shadle met the requisite qualifications for appointment to the Safety Inspector position following either the January 2023 or June 2023 job postings, and was otherwise eligible for appointment to that position.

127.    Defendants failed or refused to give Shadle the veteran's preference to which he was entitled under the Veterans' Preference Act, thereby violating the Veterans' Preference Act.

128.    Had Defendants given Shadle the veteran's preference to which he was entitled under the Veterans' Preference Act, Shadle would have been appointed to the Safety Inspector position following either the January 2023 or June 2023 job postings.

129.    Defendants acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless disregard and deliberate or callous indifference to Shadle's rights.

WHEREFORE, Plaintiff respectfully requests This Honorable Court enter judgement in his favor, and award him damages for lost wages and benefits, lost future wages and benefits, emotional distress, other compensatory damages, punitive damages, interest, attorney's fees and costs, declaratory and injunctive relief, and such other relief as is appropriate.

Plaintiff demands a jury trial.

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

**Jeffrey C. Dohrmann, Esquire**
PA ID: 68870
161 West Third Street
Williamsport, PA  17701
Tel:  (570) 323-8711
Fax:  (570) 323-4192
jdohrmann@riederstravis.com