Case 4:25-cv-00476-MWB   Document 15-7   Filed 07/15/25   Page 1 of 8

Roper v. Luzerne County, Not Reported in Fed. Supp. (2023)
2023 WL 2563082

2023 WL 2563082
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Tamra ROPER, Plaintiff,
v.
LUZERNE COUNTY, et al., Defendants.

CIVIL ACTION NO. 3:22-cv-00307
|
Signed March 17, 2023

**Attorneys and Law Firms**

Robert J. Boyer, Law Office of Robert J. Boyer, Pittston, PA, for Plaintiff.

Brendan N. Fitzgerald, Jennifer Menichini, Joseph J. Joyce, III, Lawrence J. Moran, Jr., Joyce, Carmody & Moran, P.C., Pittston, PA, for Defendants.

## MEMORANDUM

JOSEPH F. SAPORITO, JR., United States Magistrate Judge

**\*1** This is a federal civil rights and employment discrimination action, brought by Tamra Roper, a correctional officer employed at Luzerne County Correctional Facility ("LCCF"), against her employer, Luzerne County, and two of her supervisors at LCCF, Mark Rockovich and Sam Hyder. At the time of events giving rise to this action, Rockovich was the "division head" of the Luzerne County Division of Correctional Services and warden of LCCF, and Hyder was deputy warden of LCCF.

In her complaint, Roper alleges that, on multiple occasions and over a course of years, she has been subjected to workplace sexual harassment and a hostile work environment, including offensive and demeaning statements personally made by Rockovich and Roper to her co-workers and in the presence of other county managerial employees. Roper claims that this conduct violated the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act (the "PHRA"), 43 P.S. § 951 *et seq.* She further claims that, because she was a municipal employee, this same conduct constituted a violation of her Fourteenth Amendment equal protection rights, made actionable under 42 U.S.C. § 1983. She has also asserted state-law negligent hiring, training, supervision, and retention and intentional infliction of emotional distress claims, pursuant to 28 U.S.C. § 1367.

The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The defendants have filed a Rule 12(b)(6) motion to partially dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. 17.) The motion is fully briefed and ripe for decision. (Doc. 29; Doc. 32; Doc. 35.)

## I. BACKGROUND

Roper has been a correctional officer at LCCF since February 2008. Throughout that time period, she has maintained satisfactory job performance. Throughout that same period, Roper alleges that she has been subjected to a hostile work environment due to open, severe, and pervasive incidents of sexual harassment and discrimination that altered the conditions of her employment there. She alleges that managerial or supervisory employees repeatedly, openly, and falsely stated during meetings with other managerial or supervisory employees that Roper was traveling to have sex or "gangbangs" with strange men.

Specifically, Roper took a preplanned, five-day vacation to Mexico in March 2020. While she was away on vacation, Roper alleges that, during a meeting with about twelve other, unidentified county managerial or supervisory employees, defendant Rockovich allegedly announced that he was dealing with Roper "having sex with strange men." During that same meeting, defendant Hyder allegedly stated that Roper was "banging 2 pool boys at once," that he "wonder[ed] how many Mexicans she if fucking," and that she was engaged in a "gangbang" by the pool. Roper alleges that Rockovich made no effort to take any corrective action or to intervene during or after Hyder's comments.

**\*2** A few days after her return, on March 26, 2020, Rockovich allegedly informed Roper's immediate coworkers that other coworkers had called the county human resources department to allege that Roper had gone on vacation to "have sex with strange men."

Roper alleges that other, male employees at LCCF took vacation around the same time, but no statements were made about those male employees taking vacation to have sex with unknown individuals.

Case 4:25-cv-00476-MWB    Document 15-7    Filed 07/15/25    Page 2 of 8

Roper v. Luzerne County, Not Reported in Fed. Supp. (2023)
2023 WL 2563082

Roper alleges that Luzerne County and LCCF policy prohibits unlawful discrimination or harassment based upon sex, but it has failed to adhere to or enforce that policy. Roper alleges that she filed a complaint of sexual harassment with her employer, requesting an investigation, but the County failed to take any corrective action. Roper alleges that she was never even interviewed about her complaint. Roper alleges that, notwithstanding its written polices, it is the custom and practice of Luzerne County to allow violators of sexual harassment policy to resign or retire instead of facing discipline or investigation.

As a result of this allegedly unlawful discrimination or harassment, Roper alleges that she was required to pass on overtime shifts, resulting in a loss of income, she experienced stress and anxiety at work, and she experienced embarrassment, humiliation, and insult as well. Roper alleges that she also experienced psychological and emotional trauma as a result of the harassment, and she sought the care of a psychologist.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

The plaintiff has filed a five-count complaint in this action. All five counts are nominally brought against all three named defendants.[1] In Count I, the plaintiff asserts claims of sexual harassment and hostile work environment, in violation of Title VII. In Count II, she asserts parallel state-law claims of sexual harassment and hostile work environment under the PHRA. In Count III, she asserts a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983. In Count IV, she asserts state-law tort claims for negligent hiring, training, supervision, and retention. In Count V, she asserts a state-law tort claim for intentional infliction of emotional distress. For relief, she seeks an unspecified award of compensatory and punitive damages, back pay and front pay, plus reasonable attorney fees and costs incurred in this litigation.

**\*3** The defendants have moved to partially dismiss the complaint. We address their arguments count-by-count below.

### A. Title VII Employment Discrimination Claims

In Count I, the plaintiff asserts Title VII employment discrimination claims. The defendants have moved to dismiss this count to the extent it seeks recovery from the two individual defendants, Rockovich and Hyder, and to the extent it seeks an award of punitive damages. They do not otherwise seek dismissal of the plaintiff's Title VII claim against her employer, Luzerne County.

In her brief in opposition to the defendants' motion to dismiss, Roper has explicitly conceded these points. (*See* Pl.'s Opposition Br. 3, 15, Doc. 32, at 7, 19.) The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dreibelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases); *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss); *see also LM Gen. Ins. Co. v. LeBrun*, 470 F. Supp. 3d 440, 460 (E.D. Pa. 2020); *Celestial Cmty. Dev.*

Case 4:25-cv-00476-MWB    Document 15-7    Filed 07/15/25    Page 3 of 8

Roper v. Luzerne County, Not Reported in Fed. Supp. (2023)
2023 WL 2563082

*Corp. v. City of Philadelphia*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012).

Accordingly, the plaintiff's Title VII employment discrimination claim, set forth in Count I of the complaint, will be dismissed to the extent it seeks to hold individual defendants Rockovich and Hyder liable and to the extent it seeks an award of punitive damages against the County. This claim shall otherwise proceed, however, as against Luzerne County.

### B. PHRA Employment Discrimination Claims

In Count II, the plaintiff asserts parallel state-law employment discrimination claims under the PHRA. Although the parallel federal cause of action under Title VII does not permit for individual liability, the PHRA permits an individual supervisory employee to be held liable for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under his supervision. *SeeSlater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 669–70 (M.D. Pa. 2009). Thus, the defendants have moved to dismiss this count only to the extent it seeks an award of punitive damages, which are not authorized under the PHRA.

In her brief in opposition to the defendants' motion to dismiss, Roper has explicitly conceded this point. (*See* Pl.'s Opposition Br. 15, Doc. 32, at 19.) Thus, she has waived or abandoned any claim for punitive damages under the PHRA. *SeeDreibelbis*, 274 Fed. App'x at 185; *Levy-Tatum*, 183 F. Supp. 3d at 712; *D'Angio*, 34 F. Supp. 2d at 265; *see alsoLeBrun*, 470 F. Supp. 3d at 460; *Celestial Cmty. Dev. Corp.*, 901 F. Supp. 2d at 578.

Accordingly, the plaintiff's PHRA employment discrimination claims, set forth in Count II of the complaint, will be dismissed to the extent they seek an award of punitive damages. This claim shall otherwise proceed, however, as against all three defendants.

### C. § 1983 Fourteenth Amendment Equal Protection Claims

 *4  In Count III, the plaintiff asserts § 1983 Fourteenth Amendment equal protection claims. The defendants have moved to dismiss this count for failure to state a claim on which relief can be granted with respect to all three defendants, and to the extent it seeks an award of punitive damages from the County.

#### 1. Punitive Damages

The defendants have moved to dismiss this count to the extent it seeks an award of punitive damages against the County. As the defendants note in their brief in support, municipalities are immune from punitive damages awards under § 1983. *SeeCity of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

In her brief in opposition to the defendants' motion to dismiss, Roper has explicitly conceded this point. (*See* Pl.'s Opposition Br. 15, Doc. 32, at 19.) Thus, she has waived or abandoned any § 1983 claim for punitive damages against the County. *SeeDreibelbis*, 274 Fed. App'x at 185; *Levy-Tatum*, 183 F. Supp. 3d at 712; *D'Angio*, 34 F. Supp. 2d at 265; *see alsoLeBrun*, 470 F. Supp. 3d at 460; *Celestial Cmty. Dev. Corp.*, 901 F. Supp. 2d at 578.

Accordingly, the plaintiff's § 1983 equal protection claims, set forth in Count III of the complaint, will be dismissed to the extent they seek an award of punitive damages from the County.

#### 2. Municipal Liability

In this count, the plaintiff seeks to hold Luzerne County liable for the allegedly unconstitutional conduct of the individual defendants, county employees Rockovich and Hyder.[2] The plaintiff contends that the County has failed to develop and implement employment policies, practices, and procedures to prevent or correct unconstitutional workplace sex discrimination. The complaint also alleges that the County also failed to adequately train and supervise its correctional staff with respect to sexual harassment and appropriate workplace conduct.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. Luzerne County is such a municipality subject to liability as a "person" under § 1983. *Seeid.* at 694; *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality or corporation] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Alternatively, "[a] municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.' " *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers.").

**\*5** Here, the plaintiff does not rely on the affirmative implementation or execution of a policy—indeed, her complaint alleges that county policy "strictly prohibits" unlawful discrimination or harassment—but instead relies on the County's alleged failure to adopt and implement adequate policies to prevent workplace sex discrimination or sexual harassment or to take effective corrective action when it occurs. The complaint further alleges that LCCF had a workplace culture that tolerated workplace sex discrimination and sexual harassment and discouraged reporting of violations of the formal policies prohibiting such conduct.

Beyond these vague assertions that existing policies were inadequate, *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding vague assertions of policy deficiencies insufficient to impose liability under *Monell* and § 1983), the plaintiff points to no prior incidents from which we might reasonably infer that the County and its governing officials had actual or constructive knowledge of the purported policy deficiencies upon which the plaintiff's § 1983 *Monell* claims are premised. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.... Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 86 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that, where no explicit policy is identified, " 'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

The complaint attempts to identify three such prior incidents, identifying three other lawsuits against the County that involved sex discrimination and harassment directed against female correctional officers or staff at LCCF. (*See* Compl. ¶ 35, Doc. 1, at 6.) These lawsuits include: (1) *Beckley v. Luzerne County Correctional Facility*, Case No. 3:11-cv-00315 (M.D. Pa. filed Feb. 15, 2011), which was settled and dismissed on November 30, 2011; (2) *Sweet v. Luzerne County Correctional Facility*, Case No. 3:11-cv-00330 (M.D. Pa. filed Feb. 18, 2011), which was settled and dismissed on November 22, 2011; and (3) *Karavitch v. Luzerne County*, Case No. 3:22-cv-00308 (M.D. Pa. filed Mar. 1, 2022), which was settled and dismissed on June 24, 2022.

The last of these three lawsuits, *Karavitch*, cannot be relied upon because it was filed on the same day as this action, two years *after* the events giving rise to this action, which occurred in March 2020.

The other two lawsuits, *Beckley* and *Sweet*, filed and dismissed nearly a decade before events giving rise to this action, are likewise unhelpful to the plaintiff here. Both of

these prior lawsuits were settled without any finding against—or admission of liability by—the County with respect to constitutionally inadequate policies, training, or discipline. The mere filing of these two civil complaints is insufficient to support the imposition of municipal liability under *Monell*. *See* *Lawson v. City of Philadelphia*, Civil Action No. 17-4228, 2020 WL 93941, at *4 & n.3 (E.D. Pa. Jan. 8, 2020). "To impose liability on a municipality more information about such lawsuits is required, such as whether they resulted in a finding that a constitutional violation occurred and whether the municipality's response to the suits could demonstrate deliberate indifference to the risk of future constitutional violations." *Pharaoh v. Dewees*, Civil Action No. 14-3116, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016). Moreover, by referencing the court's docket record for these two prior lawsuits, it is evident that, although both case involved claims of sexual harassment or hostile work environment under Title VII and the PHRA, neither complaint asserted a § 1983 claim of unconstitutional discrimination.[3]

**\*6** Alternatively, the plaintiff argues in her brief that the County can be held liable because Rockovich and Hyder are "final policymakers" for the County, and thus their knowledge and acquiescence in discriminatory and harassing conduct, or their own direct participation in such conduct, can be attributed to the County, placing it on notice of the allegedly unconstitutional conduct as it occurred. The complaint's labeling of these defendants as "final policymakers," however, is an unsupported legal conclusion, which is not entitled to any deference on a motion to dismiss. *See* *Morrow*, 719 F.3d at 165.

As the Supreme Court of the United States has instructed,

> [t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing *final* government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986) (emphasis added, citation and footnotes omitted). Under county municipal law, the Division of Correctional Services is responsible for the operation of LCCF and related offices and programs. *See* Luzerne Cnty. Admin. Code § 6.03 (amended Aug. 23, 2022), *available at* https://www.luzernecounty.org/DocumentCenter/View/29781/Luzerne-County-Administrative-Code-August-23--2022.[4] That division is, in turn, headed by a division head, who also functions as the warden of LCCF. *See id.* This ordinance further provides that the warden will be assisted by a deputy warden in overseeing LCCF. *See id.* But the ordinance does not confer upon the warden final policymaking authority with respect to personnel policies at LCCF. *See id.* Instead, county municipal law explicitly provides that the county policymaker with final decision-making authority over the personnel policies that govern LCCF employees, including policies concerning sexual harassment, is the *county manager*. *See* Luzerne Cnty. Pers. Code § 1004.01(A) (amended July 24, 2018) (providing that all personnel policies are subject to approval by the county manager), *available at* https://www.luzernecounty.org/DocumentCenter/View/13934/Personnel-Code-Amended-07-24-18*l*; *id.* § 1004.01(B) (providing that personnel policies include policies covering sexual harassment). Thus, neither Rockovich nor Hyder is a "final policymaker" for *Monell* purposes.

Ultimately, the complaint suggests that the County should be held liable because the alleged sex discrimination or sexual harassment directed at Roper over a period of days in March 2020 could have been prevented if the County had simply implemented better policies. But policies are not deficient simply because they are not the best. *See* *Serafin v. City of Johnstown*, 53 Fed. App'x 211, 215 (3d Cir. 2002) ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here."); *see also* *Koreny v. Smith*, Civil Action No. 17-371, 2018 WL 1141513, at *16 (W.D. Pa. Mar. 2, 2018) ("An assertion that a constitutional injury could have been avoided with more or better training is insufficient.").

**\*7** Accordingly, the plaintiff's § 1983 equal protection claims, set forth in Count III of the complaint, will be dismissed to the extent that they seek to impose *Monell* municipal liability on Luzerne County.

### 3. Individual Defendants

In this count, the plaintiff seeks to hold the individual defendants, Rockovich and Hyder, liable for violation of her Fourteenth Amendment equal protection rights. She alleges that Rockovich and Hyder sexually harassed her over a period of several days in March 2020.[5] She further alleges that unspecified male employees who took vacation around that same time were treated differently—that is, the defendants did not make similarly derogatory statements about those unspecified male colleagues at the time.[6]

To prevail on an equal protection claim, a plaintiff must demonstrate that she was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental. *See* *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423–24 (3d Cir. 2000). Mere conclusory allegations will not suffice. *See* *Blanchard v. Gallick*, 448 Fed. App'x 173, 176 (3d Cir. 2011).

While Roper has alleged in conclusory fashion that she was treated differently from unidentified male colleagues who went on vacation around the same time, she has failed to articulate any facts whatsoever to support a *plausible* claim that she was indeed treated differently from similarly situated individuals. *See* *D'Altilio v. Dover Twp.*, Civil Action No. 1:06-CV-1931, 2007 WL 2845073, at *8 (M.D. Pa. Sept. 26, 2007) ("Mere harassment based on protected-class status without identification of similarly situated individuals outside the class will not support an equal protection violation."). The bald assertion that male employees were treated in a dissimilar manner, without more, does not provide the defendants with the notice required to frame a responsive pleading to Roper's equal protection claim. *See* *Young v. New Sewickley Twp.*, 160 Fed. App'x 263, 266 (3d Cir. 2005); *see also* *D'Altilio*, 2007 WL 2845073, at *8 ("[T]he plaintiff must allege 'occasions or circumstances' of differential treatment."). "[E]ven if [the complaint] were deemed sufficient to suggest differential treatment, it lacks any factual basis for an inference that [she] was treated differently because of [her] gender." *Burnett v. Springfield Twp.*, Civil Action No. 13-1646, 2014 WL 3109963, at *8 (E.D. Pa. July 8, 2014); *see also* *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (upholding dismissal of complaint that "does not contain any factual allegation sufficient to plausibly suggest [the defendants'] discriminatory state of mind").

**\*8** Accordingly, the plaintiff's § 1983 equal protection claims, set forth in Count III of the complaint, will be dismissed to the extent that they seek to hold the individual defendants, Rockovich and Hyder, liable.

### D. State-Law Negligent Hiring, Training, Supervision, and Retention Claims

In Count IV, the plaintiff asserts state-law negligent hiring, training, supervision, and retention claims against all three defendants. The defendants seek dismissal of these claims on the merits and on the ground that the defendants are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. Cons. Stat. § 8541 *et seq.*

The PPSTCA bars claims of negligent hiring, training, supervision, and retention as against the county or its employees. *See* *Hernandez v. York Cnty.*, 288 Fed. App'x 781, 783 (3d Cir. 2008) (per curiam) (affirming district court finding that county and warden were entitled to immunity from state-law negligent hiring, training, retention, and supervision claims under the PPSTCA); *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 930 (M.D. Pa. 2015) (finding school district and superintendent immune from negligent supervision, hiring, and training claims under PPSTCA); *Joyner v. Sch. Dist. of Philadelphia*, 313 F. Supp. 2d 495, 504 (E.D. Pa. 2004) ("Negligent hiring, training and retention of an unfit supervisor is not one of the negligent acts for which [sovereign] immunity is waived.").

In her brief in opposition, the plaintiff argues that the individual defendants, Rockovich and Hyder, are not entitled to immunity because their direct involvement in the allegedly discriminatory or harassing conduct goes beyond negligence to deliberate indifference or willful conduct. As this court has previously observed, "the PPSTCA ... strips an employee of immunity if he or she engages in conduct that is found to constitute 'a crime, actual fraud or willful misconduct.' " *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 433 (M.D. Pa. 2014) (quoting 42 Pa. Cons. Stat. § 8550).

"Willful misconduct is synonymous with intentional tort." *Id.* But the plaintiff here has asserted a claim for *negligent* hiring, training, supervision, and retention and, "by definition, negligent acts do not include acts or conduct which constitutes a crime, actual fraud, actual malice[,] or willful misconduct." *Id.* The plaintiff's argument that the individual defendants acted with deliberate indifference is likewise unavailing, because "deliberate indifference is a standard

Roper v. Luzerne County, Not Reported in Fed. Supp. (2023)
2023 WL 2563082

Case 4:25-cv-00476-MWB   Document 15-7   Filed 07/15/25   Page 7 of 8

which falls short of intent to cause harm and is not willful misconduct abrogating immunity under the PPSTCA."*Id.* (internal quotation marks omitted).

Accordingly, the plaintiff's state-law negligent hiring, training, supervision, and retention claims, set forth in Count IV of the complaint, will be dismissed in their entirety.

### E. State-Law Intentional Infliction of Emotional Distress Claims

In Count V, the plaintiff asserts state-law intentional infliction of emotional distress ("IIED") claims against all three defendants. The defendants seek dismissal of these claims on the merits and on the ground that the defendants are entitled to immunity under the PPSTCA.[7]

**\*9** It is simply beyond cavil that, under the PPSTCA, the County is entitled to immunity from claims of IIED, an intentional tort. *SeeLakits v. York*, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003) ("Courts have held that intentional torts constitute 'willful misconduct' under the Act, for which a municipality cannot be held liable under the Tort Claims Act. Courts have specifically found that municipalities are immune from claims of 'intentional infliction of emotional distress.' ") (citations omitted); *see alsoSimpson v. Philadelphia Sheriff's Office*, 351 F. Supp. 3d 919, 926 (E.D. Pa. 2019); *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 754 n.10 (M.D. Pa. 2009); *Roskos v. Sugarloaf Twp.*, 295 F. Supp. 2d 480, 490–91 (M.D. Pa. 2003).

As an intentional tort, PPSTCA immunity does not extend to IIED claims against municipal employees Rockovich and Hyder. *SeeM.S.*, 43 F. Supp. 3d at 433. But under Pennsylvania law, sexual harassment in the employment context typically only rises to the level of outrageousness necessary to support an IIED claim when the employer has engaged in both harassment *and* retaliation. *SeeAndrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990); *Doe 1 v. Shawnee Holding, Inc.*, Civil Action No. 3:21-cv-01037, 2022 WL 801503, at *3 (M.D. Pa. Mar. 15, 2022). No retaliation is alleged in this case. Thus, the plaintiff has failed to state plausible IIED claims against defendants Rockovich and Hyder.

Accordingly, the plaintiff's state-law intentional infliction of emotional distress claims, set forth in Count V of the complaint, will be dismissed in their entirety.

### F. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, based on the facts alleged in the complaint, it is clear that any amendment would be futile with respect to the plaintiff's Title VII and state-law claims, but it is not clear that amendment would be futile with respect to the plaintiff's § 1983 claims. Nor that it would be inequitable to the defendants. Therefore, upon dismissal of the plaintiff's § 1983 equal protection claims, set forth in Count III of the complaint, she will be granted leave to file an amended complaint.

### IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted. The plaintiff's Title VII claim against Luzerne County and her PHRA claims against all three defendants will be permitted to proceed. All other claims, including the plaintiff's request for punitive damages under Title VII and the PHRA, will be dismissed. The plaintiff will be permitted to attempt to cure any pleading deficiencies and file an amended complaint. If the plaintiff fails to timely file an amended complaint, however, the defendants will be directed to answer the original complaint and the case will proceed with that as the operative pleading.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2563082

Roper v. Luzerne County, Not Reported in Fed. Supp. (2023)
2023 WL 2563082

Case 4:25-cv-00476-MWB   Document 15-7   Filed 07/15/25   Page 8 of 8

**Footnotes**

| | |
|---|---|
| 1 | The defendants do not seek dismissal on the basis of Roper's "group pleading" of facts and claims against the "defendants" generically. For the plaintiff's consideration in preparing any future amended complaint, however, we note that, at least with respect to § 1983 claims requiring plausible allegations of personal involvement, group pleadings against "defendants" generically are potentially subject to dismissal. *See, e.g.,Simonton v. Ryland-Tanner*, 836 Fed. App'x 81, 84 (3d Cir. 2020) (per curiam); *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 569 n.21 (W.D. Pa. 2019) ("Group pleadings as to such matters will not suffice."). |
| 2 | In asserting § 1983 equal protection claims against Rockovich and Hyder, the complaint does not specify whether these individual defendants are named in their official or personal capacities, and briefing has failed to clarify this issue any further. To the extent these § 1983 claims are brought against the individual defendants in their official capacities, such claims are dismissed as duplicative of the plaintiff's § 1983 claims against the County itself, addressed in this part of our opinion. *Halchak v. Dorrance Twp. Bd. of Supervisors*, ––– F. Supp. 3d ––––, 2022 WL 17742270, at *11 n.18 (M.D. Pa. Dec. 16, 2022). To the extent these § 1983 claims are brought against the individual defendants in their personal capacities, we address them separately below. *See id.* |
| 3 | A district court, of course, may properly take judicial notice of its own records. *See*Fed. R. Evid. 201; *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 498–99 (3d Cir. 1997). |
| 4 | "Municipal ordinances that are available online via a municipality's website ... constitute public records and are subject to judicial notice." *Hena v. Vandegrift*, ––– F. Supp. 3d ––––, 2020 WL 1158640, at *25 (W.D. Pa. Mar. 10, 2020). |
| 5 | Specifically, the complaint alleges one incident of harassment that occurred during a meeting attended by Rockovich and Hyder that took place sometime between March 18 and 23, 2020, while Roper was away on vacation, and a second incident that occurred when Rockovich spoke to her coworkers on March 26, 2020. |
| 6 | The plaintiff asserts traditional protected-class equal protection claims, based on gender. The defendants noted in their initial brief that an equal protection claim based on a "class of one" theory is not cognizable in the public employment context. *See, e.g.,Adams v. Luzerne Cnty.*, 36 F. Supp. 3d 511, 519–20 (M.D. Pa. 2014). The plaintiff did not respond to this statement in her opposition brief, and it is clear from the complaint and briefs that she does not also rely on a "class of one" theory. |
| 7 | The defendants also argue that the plaintiff's IIED claims are preempted by the Pennsylvania Workers Compensation Act. But we decline to consider this argument, which is deemed waived because it was raised for the first time in a reply brief. *See*Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 66 n.4 (E.D. Pa. 2020); *Penn Nat'l Ins. v. HNI Corp.*, 482 F. Supp. 2d 568, 603 n.7 (M.D. Pa. 2007). |

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.